**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 10-61588-CIV-HUCK/BANDSTRA**

LAVERN DEER,

      Plaintiff,

v.

SALTZMAN, TANIS, PITTELL, LEVIN &
JACOBSON, INC., d/b/a PEDIATRIC
ASSOCIATES,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Lavern Deer, an African-American female, brings this action against her former employer, Saltzman, Tanis, Pittell, Levin & Jacobson, Inc. ("Pediatric Associates"), asserting claims of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.  Ms. Deer contends that Pediatric Associates discriminated against her by failing to promote her to Director of Clinical Services and that Pediatric Associates retaliated against her for filing a claim with the Equal Employment Opportunity Commission ("EEOC") regarding this alleged discrimination.  The case is presently before the Court on Defendant's Motion for Summary Judgment (D.E. #38), in which Pediatric Associates requests that this Court enter judgment in its favor on all counts set forth in Ms. Deer's Third Amended Complaint (D.E. # 30).  For the reasons discussed below, the Pediatric Associates' Motion for Summary Judgment is granted in full.[1]

_____

    [1] Pediatric Associates argues that the Court must deem all facts set forth in its statement of undisputed facts admitted because Ms. Deer failed to file a statement of contested facts in conjunction with her Response in Opposition to Defendant's Motion for Summary Judgment ("Response in Opposition") (D.E. #56), as required by the Local Rules.  The Court, however, must still conduct an independent review of the record before ruling on Defendant's Motion.  *See* S.D. Fla. L.R. 7.5(d).  Thus, although Ms. Deer has not submitted the requisite statement of facts in dispute, the Court will look to the record in determining whether, when viewed in the light most favorable to Ms. Deer, the evidence and reasonable factual inferences drawn therefrom present a genuine issue of material fact sufficient to survive summary judgment.  The following factual background is uncontroverted except where otherwise noted.

I.      **FACTUAL BACKGROUND**

Pediatric Associates provides primary pediatric healthcare at several South Florida locations. Ms. Deer began working at Pediatric Associates in 1992.  She was initially hired as an X-Ray Lab Technician and was subsequently promoted to Clinical Lab Supervisor in 1995 and Clinical Manager in 2001.  Additionally, Ms. Deer took on the responsibilities of Loop Coordinator for the South Region in 2005.

For approximately the last five years of her employment, Ms. Deer worked at Pediatric Associates' Skylake office. Dr. Richard Bennett, the Lead Physician at Skylake, was her supervisor. In her capacity as Clinical Manager, Ms. Deer also reported to the Director of Clinical Services at Pediatric Associates' corporate office.

As evidenced by her 2008 performance evaluation, Ms. Deer appeared to be a good, if not outstanding, employee.  In her 2008 evaluation, Dr. Bennett noted: "Lavern is an excellent Clinical Manager with a gregarious work ethic.  She is focused on all the right goals and is the ultimate team player.  The only improvement Lavern could make is in her goal setting and her following through on those goals."[2]  2008 Annual Review (D.E. #40-3) at 8.  Ms. Deer also expressed her respect for Dr. Bennett at this time.  In the "Employee Comments" section of her 2008 evaluation, Ms. Deer stated: "Thanks to Dr. Bennett, a true leader who believes in his managers[,] allowing them to creatively manage and efficiently succeed as a team."  *Id.* at 9.

Pediatric Associates contends, however, that Ms. Deer's performance deteriorated soon after her 2008 performance review.  In her Declaration in Support of Defendant's Motion for Summary Judgment ("Caruso Decl.") (D.E. #40), Angela Caruso, the Director of Human Resources, states that she and Dr. Bennett discussed Ms. Deer's performance problems several times in 2009.  Dr. Bennett also claims that Ms. Deer "was not spending sufficient time on the floor managing her staff" and "was not training her staff or supervising them towards building a team or teamwork atmosphere at Skylake."  Bennett Decl. (D.E. #41) at 2.  In 2009, "Ms. Deer's attitude towards her work was not

---

[2]    In his Declaration in Support of Defendant's Motion for Summary Judgment ("Bennett Decl.") (D.E. #41), Dr. Bennett states that, in 2008, Ms. Deer began displaying a poor attitude and not was not getting along with staff.  While it does not appear that Dr. Bennett noted any such problems in Ms. Deer's 2008 evaluation, Ms. Deer included the following statement in the "Employee Comments" section of her 2008 review: "If my management style offends anyone, please forgive me.  I refuse to tollerate [sic] imperfection and instill the same values in my staff."  2008 Annual Review (D.E. #40-3) at 9.

what it had been previously." *Id.* at 3.  Ms. Deer, on the other hand, contends that her performance in 2009 was exemplary.

In December 2009, Dr. Bennett reprimanded Ms. Deer for failing to work cooperatively with Daisy Giron, a recently hired Front Office Manager.  Dr. Bennett was "very frustrated with Ms. Deer's attitude at this point and told her that she needed to either 'kiss up to Ms. Giron' or 'kiss her butt' or words to that effect." *Id.*  Dr. Bennett claims that he was speaking to Ms. Deer "as a father or a friend and was advising that her attitude was very bad and she had developed a reputation of not getting along." *Id.*  Dr. Bennett told Ms. Deer that, "if she wanted to move up in the company, she would need to change this attitude and be more inclusive and welcoming in order to improve her performance." *Id.*  According to Ms. Deer, Dr. Bennett stated that she "should have been promoted a long time ago but it was because of the perception that people had of [her] that [she] wasn't," and if Ms. Deer wanted to change that perception she should be "kissing Giron's a--."[3]  Decl. of Lavern Deer in Supp. of Resp. in Opp'n to Mot. Summ. J. ("Deer Decl.") (D.E. #57) at 5.

On February 5, 2010, Ms. Deer filed a Charge of Discrimination with the EEOC.  Ms. Deer claimed that she had been continually passed over for promotions and that, most recently, she was passed over for the position of Director of Clinical Services.  In her Charge of Discrimination, Ms. Deer recounted the December 2009 confrontation with Dr. Bennett discussed above.[4]

According to Pediatric Associates, Ms. Deer's poor performance continued throughout early 2010.  Ms. Deer did not complete her work on time, which, in turn, held up administrative reports. Her attitude was unprofessional and disrespectful to other managers.  Additionally, Pediatric Associates contends that Ms. Deer was responsible for a serious discrepancy in Pediatric Associates' inventory of Prevnar, a vaccine, at a cost of $54,015.00 to Pediatric Associates.  Furthermore, Ms. Deer was spending almost all her time in her office and not on the floor managing staff.  Ms. Deer also failed to show up for work on time and left the office without approval during work hours.  Ms. Deer's performance deficiencies were addressed in a March 2, 2010 Documented Note to File, which Ms. Deer signed upon review.

---

[3]  Dr. Bennett expressly denies using the term "a--."

[4]  In describing the December 2009 encounter with Dr. Bennett, Ms. Deer initially indicated that Dr. Bennett stated that she "should be kissing Manager Daisy Giron's (White) a--." Charge of Discrimination (D.E. #45-27).  Ms. Deer, however, has since denied stating that Dr. Bennett said "white" a--.  *See* Deer Decl. at 5; Dep. of Lavern Deer (D.E. 45-1) at 66.

On March 5, 2010, Rolando Vega, the IT Supervisor at Pediatric Associates, informed Ms. Caruso that, while monitoring Pediatric Associates' computer system, he noticed some "red flags" related to the use of Ms. Deer's company computer.   Ms. Caruso subsequently asked Mike Kirkpatrick, Pediatric Associates' Systems Administrator, to investigate Ms. Deer's workstation. Ms. Caruso also requested access to Ms. Deer's email.   Ms. Caruso's investigation of Ms. Deer's email account revealed that several hours of Ms. Deer's time were spent exchanging non-work related emails regarding Carib United, Inc. and JHSASN, two organizations with which Ms. Deer was involved.   Pediatric Associates' policies prohibit personal use of the computer network, internet, and email, as well as conducting personal business during work hours.

On March 9, 2010, Dr. Bennett conducted Ms. Deer's 2009 performance evaluation, which he prepared on February 17, 2010.   The evaluation reflected Dr. Bennett's concerns regarding Ms. Deer's low initiative, lack of organization, failure to spend sufficient time on the floor managing her staff, and need for team building.   Ms. Deer refused to sign the 2009 performance evaluation.   Later that day, Ms. Deer left work without advising Dr. Bennett of her whereabouts.   Dr. Bennett then sent Ms. Deer an email instructing her to let him know when she leaves the office.   The next day, Ms. Deer again left the office.   Ms. Deer subsequently took FMLA leave, effective March 10, 2010, and did not return to the Skylake office until March 23, 2010.   Ms. Deer states that she took medical leave due to the negative treatment and unwarranted stress from Pediatric Associates.

Upon Ms. Deer's return, Ms. Caruso presented Ms. Deer with two critical offense warnings, one for improper use of her company computer and email and one for job abandonment.   Ms. Caruso contends that, when initially questioned about the misuse of her computer and email, Ms. Deer denied her involvement in Carib United, Inc. and JHSASN, but when confronted with examples of emails from her computer, Ms. Deer stated that she "guessed that meant she was lying."   Ms. Deer claims that she told Ms. Caruso that she was the president of both organizations and that she never admitted to lying about this fact.

According to Ms. Caruso, Ms. Deer did not go back to her office after the disciplinary meeting and did not perform the work she was instructed to do.   The following day, Dr. Bennett observed that Ms. Deer stayed in her office with the door closed and did not provide supervisory support to her staff.   Ms. Deer contends she was in her office creating an action plan to complete the tasks she needed to perform.   At the end of the day, Ms. Caruso and Susan Glennon, the Director of Clinical Services, terminated Ms. Deer.

On August 29, 2010, Ms. Deer brought the instant action.  In her Third Amended Complaint, Ms. Deer alleges that Pediatric Associates discriminated against her by failing to promote her to Director of Clinical Services and by filling the position with white applicants.  Ms. Deer further contends that Pediatric Associates retaliated against her for filing a claim with the EEOC.  Pediatric Associates seeks summary judgment on both counts.

## II.   ANALYSIS

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In the present case, Pediatric Associates "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to Ms. Deer to demonstrate that a genuine issue of fact exists.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).  Ms. Deer may not simply rest upon the allegations set forth in her Third Amended Complaint, but must come forward with specific facts showing that there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Similarly, while the evidence and reasonable inferences drawn therefrom must be construed in Ms. Deer's favor, "inferences based upon speculation are not reasonable."  *Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986).

Furthermore, where, as here, a summary judgment motion is before the Court in a Title VII case involving circumstantial evidence, the Court analyzes the case within the confines of the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5]  *See Greer v. Birmingham Beverage Co.*, 291 F. App'x 943, 944 (11th Cir. 2008).  Under this framework, Ms. Deer must first present sufficient evidence "to allow a reasonable jury to determine that [she] has satisfied the elements of [her] prima facie case."  *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).  If Ms. Deer meets her initial burden, the burden shifts to Pediatric Associates to "articulate a legitimate, nondiscriminatory reason for the employment decision."  *Id.*  The burden then shifts back to Ms. Deer to show that the reasons articulated by Pediatric Associates are pretextual.  *Id.*  The

---

[5]   "Both § 1981 and Title VII 'are subject to the same standards of proof and employ the same analytical framework.'"  *McCray v. Wal-Mart Stores, Inc.*, 377 F. App'x 921, 923 (11th Cir. 2010) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009)).  Accordingly, the Court's analysis regarding Ms. Deer's Title VII claims applies with the same force to her assertions under 42 U.S.C. § 1981.

*McDonnell Douglas* burden-shifting analysis applies to both Ms. Deer's failure-to-promote claim and her retaliation claim. *See Harrison v. Int' Bus. Mach. Corp.*, 378 F. App'x 950, 954 (11th Cir. 2010). The Court shall address each claim in turn.

### A.     Failure to Promote

To establish a prima facie case of discrimination for failure to promote under Title VII, Ms. Deer must demonstrate (1) that she belongs to a protected class; (2) that she was qualified for and applied for a promotion; (3) that she was rejected for that promotion; and (4) that an individual outside her protected class received the promotion. *Watkins v. Sec'y Dep't of Homeland Sec.*, 401 F. App'x 461, 466 (11th Cir. 2010) (citing *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998)); *see also Vessels  v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (listing elements of a failure-to-promote claim). Pediatric Associates contends that Ms. Deer cannot establish a prima facie case for failure to promote because she lacked the necessary education, experience, and skills required for the Director of Clinical Services position and thus was not qualified for such promotion.[6]

At the prima-facie-case stage, Ms. Deer need only show that she satisfied Pediatric Associates' objective qualifications for the Director of Clinical Services position. *See Vessels*, 408 F.3d at 769; *see also Greer*, 291 F. App'x at 945 ("To show he was qualified, a plaintiff need only show that he satisfied an employer's objective qualifications. Subjective qualifications are evaluated at the pretext stage of the inquiry.") (internal quotations and citations omitted). In its Motion for Summary Judgment, Pediatric Associates argues that Ms. Deer was not objectively qualified for the Director of Clinical Services position because she did not possess a Registered Nursing ("R.N.")

---

[6] In its Motion for Summary Judgment, Pediatric Associates also contends that Ms. Deer cannot establish a prima facie case of discrimination based on failure to promote with respect to the Regional Clinical Manager and Director of Customer Service positions. While Ms. Deer generally contends that she "began to feel in 2004 that there was racial discrimination occurring" at Pediatric Associates, Deer Decl. (D.E. #57) at 5, the only specific position for which Ms. Deer claims she was passed over is the Director of Clinical Services position. *See* Third Am. Compl. (D.E. #30) at 5–7; Resp. in Opp'n (D.E. #56) at 1–4. Similarly, the EEOC Charge of Discrimination filed by Ms. Deer, while noting that she had been "continually passed over for promotion," only specifically addresses Pediatric Associates' failure to promote Ms. Deer to the Clinical Director position in 2009. *See* Charge of Discrimination (D.E. #45-27). It is therefore apparent that Ms. Deer has limited her claims to those regarding the Director of Clinical Services position. Accordingly, the Court need not address Pediatric Associates' arguments with respect to the Regional Clinical Manager or Director of Customer Services positions.

degree.  In support of this contention, Pediatric Associates submits the declaration of Terry Fields, who serves as Pediatric Associates' Chief Operating Officer and is in charge of the hiring decisions regarding the Director of Clinical Services.  In his declaration, Mr. Fields states: "Sometime in 2009 prior to July 1, 2009, I made the decision to upgrade the qualifications and requirements for the Director of Clinical Services position."  Decl. of Terry Fields in Supp. of Mot. Summ. J. ("Fields Decl.") (D.E. #43) at 1–2.  Specifically, because the Director of Clinical Services is required to coordinate and supervise twenty-one offices and manage twenty-one Clinical Managers, and because Mr. Fields "sought to refine and improve both the quality of services and the professional and technical aspects of the job," Mr. Fields revised the qualifications for the Director of Clinical Services position to require potential candidates to possess an R.N. degree.  *Id.* at 2.  Both Liana Tidwell, who was hired as the Director of Clinical Services in July 2009, and Susan Glennon, who replaced Ms. Tidwell as the Director of Clinical Services in January 2010, possessed R.N. degrees. *Id.*  Ms. Deer does not possess an R.N. degree.

Ms. Deer, in response, claims that while she "does not have direct personal knowledge, it is her good faith belief that the R.N. requirement was not in effect at the time she put in her request for the position and was also not in effect at the time both Tidwell and Glennon were placed in this position."[7]  Resp. in Opp'n (D.E. #56) at 2.  At the summary judgment stage, however, Ms. Deer's "good faith belief" is simply not enough.  *See Anderson*, 477 U.S. at 248 (noting that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue

---

[7]  Ms. Deer claims, in her Response in Opposition, that she is "currently investigating" Pediatric Associates' assertions regarding the R.N. requirement and "intends through discovery to determine if this requirement was in fact in place at the relevant times in question."  Resp. in Opp'n (D.E. #56) at 2.  Ms. Deer, however, has had ample time to conduct discovery.  There is no indication that Ms. Deer attempted to investigate this issue in the more than eight months between the time the original Complaint in this action was filed and the date on which Ms. Deer filed her Response in Opposition.  Furthermore, discovery is still open in this case, as the trial was reset for November 21, 2011, in April of this year.  *See* Order Re-Setting Trial and Calendar Call (D.E. #49).  Yet at no point since filing her Response in Opposition has Ms. Deer informed the Court that she has conducted discovery on this issue or has uncovered evidence contrary to that presented by Pediatric Associates.  Thus, Ms. Deer's contention that she is "currently investigating" whether an R.N. degree was in fact necessary does not preclude a grant of summary judgment in favor of Pediatric Associates.  *See Celotex Corp.*, 477 U.S. at 322 (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

for trial") (internal quotations omitted); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.  Moreover, statements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment.") (citation omitted).  Ms. Deer has offered absolutely no evidence in support of her contention that she was objectively qualified for the Director of Clinical Services position, and she has therefore failed to raise a genuine issue of material fact as to existence of a prima facie case of discrimination for failure to promote.[8]  Accordingly, summary judgment is warranted with respect to this claim.[9]

---

[8]  Because Ms. Deer failed to establish a prima facie case, it is not necessary for the Court to determine whether Pediatric Associates has proffered legitimate, nondiscriminatory reasons for not promoting Ms. Deer or whether such reasons are pretextual.  In any event, however, Pediatric Associates has proffered several legitimate, nondiscriminatory reasons for hiring other individuals to the Director of Clinical Services position instead of promoting Ms. Deer.  For example, in addition to the fact that Ms. Deer lacked an R.N. degree, Pediatric Associates contends that Ms. Deer "cannot even begin to compare her qualifications with either Tidwell's or Glennon's qualifications."  Mot. Summ. J. (D.E #38) at 7.  In contrast to Ms. Deer's Clinical Manager position, which is a "clerical/administrative position with supervisory responsibilities," the "Director of Clinical Services is a senior management position requiring working with physicians."  Field Decl. (D.E. #43) at 2.  The Director of Clinical Services also has "direct responsibilities for quality of care, clinical operations, and patient satisfaction and also for the financial performance of the operation."  *Id.* at 3.  Ms. Tidwell possessed an R.N. degree and seventeen years of pediatric nursing experience.  *Id.* at 2.  She also had "exceptional skills in the financial aspects as well as the technical aspects of this type of position."  *Id.*  As noted above, Ms. Glennon, who replaced Ms. Tidwell in the Director of Clinical Services position, also possessed an R.N. degree.  Ms. Deer does not challenge the evidence presented by Pediatric Associates regarding Ms. Tidwell's and Ms. Glennon's qualifications and does not contend that she was more qualified for the Director of Clinical Services position than Ms. Tidwell or Ms. Glennon.  Ms. Deer thus has failed to demonstrate that this articulated reason for hiring these two women instead of promoting Ms. Deer is pretext for racial discrimination.

[9]  Though not directly relevant to the elements of Ms. Deer's failure-to-promote claim, it is important to note that Donna Lewis, who held the Director of Clinical Services position immediately before Mr. Fields upgraded the qualifications, also was African American.  While the parties dispute the reason Ms. Lewis stepped down from that position—Ms. Deer claims that Ms. Lewis was treated poorly by Pediatric Associates and Pediatric Associates contends that Ms. Lewis asked to transfer to a Regional Clinical Manager position because she found she lacked the technical skills for the position and was overwhelmed—the fact that individuals within Ms. Deer's protected class held the Clinical Director position, as well as other positions Ms. Deer allegedly desired, such as the Regional Clinical Manager position, undercuts Ms. Deer's assertions of discrimination.

### B.    Retaliation

Pediatric Associates also argues that summary judgment is appropriate with respect to Ms. Deer's claim that Pediatric Associates retaliated against her for filing her February 5, 2010 Charge of Discrimination with the EEOC.[10]   Pediatric Associates first contends that Ms. Deer cannot establish a prima facie case of retaliation.  Pediatric Associates also argues, however, that even if Ms. Deer establishes a prima facie case, Pediatric Associates "has advanced multiple legitimate, non-discriminatory and non-retaliatory reasons for its employment decisions," Mot. Summ. J. (D.E. # 38) at 14, and Ms. Deer has not presented any evidence indicating that such reasons are pretextual.

To establish a prima facie case of retaliation under Title VII, Ms. Deer must show (1) that she engaged in statutorily protected activity; (2) that she suffered a materially adverse employment action; and (3) that there was some causal relationship between the two events.  *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *see also Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (listing elements of a prima facie case of retaliation).  The parties do not dispute that filing an EEOC claim is a protected activity under Title VII.  Furthermore, while Pediatric Associates disputes whether all the actions complained of actually amount to adverse employment actions,[11] the Court presumes, for purposes of this analysis, that Ms. Deer suffered adverse employment action.  In light of the following discussions on causation, the third element of a prima facie case of retaliation, and pretext, it is unnecessary to analyze whether each alleged action itself constitutes an adverse employment action.[12]

---

[10]   That Ms. Deer's failure-to-promote claim fails as a matter of law does not necessarily preclude Ms. Deer's retaliation claim.  "[R]etaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed."  *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).

[11]   For example, Pediatric Associates claims that Ms. Deer's allegation that Pediatric Associates intentionally ignored her and only communicated with her when it pertained to subjecting her to punishment is not actionable because "'petty slights, minor annoyances, and simpl[e] lack of good manners' will not be considered retaliatory actions."  Mot. Summ. J. (D.E. #38) at 11(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

[12]   In any event, "*Burlington* also strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions."  *Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008) (citing *Burlington*, 548 U.S. at 71).

In order to demonstrate a causal connection, Ms. Deer must show, at a minimum, that the adverse employment actions actually followed the protected conduct. *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir.1999). This "minimum proof stems from the important requirement that 'the employer was actually aware of the protected expression at the time it took adverse employment action.'" *Id.* (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). Aside from her ultimate termination, Ms. Deer claims that she experienced several adverse employment actions after filing her EEOC claim on February 5, 2010. Specifically, Ms. Deer contends that, "upon notification of her charge of discrimination," she was "suddenly and continuously faced with opposition from her superiors" and was "reprimanded for tardiness, failure to be on the floor supervising staff, failure to complete immunization tracker reports, improper use of company computers, and job abandonment that never before were brought forth against [her] in any of the years prior." Resp. in Opp'n (D.E. #56) at 4–5.

In its Motion for Summary Judgment, Pediatric Associates argues that it was unaware of Ms. Deer's Charge of Discrimination at the time several of the above actions occurred. Although Ms. Deer filed her Charge of Discrimination on February 5, 2010, and contends that she received negative treatment from Pediatric Associates "from mid-February to her ultimate termination on March 24, 2010," *id.* at 4, Ms. Caruso states that Pediatric Associates did not receive the Notice of Charge of Discrimination until March 9, 2010. Similarly, Dr. Bennett contends that he was "not aware that Ms. Deer had filed a Charge of Discrimination with the EEOC until approximately March 16, 2010." Bennett Decl. (D.E. #41) at 6. Furthermore, the Notice of Charge of Discrimination itself is dated March 2, 2010. *See* Notice of Charge of Discrimination (D.E. #62-3). The fact that the EEOC did not prepare its notification until March 2, 2010, indicates that Pediatric Associates did not have knowledge of Ms. Deer's Charge of Discrimination prior to that date. This substantiates Ms. Caruso's statement that Pediatric Associates was unaware of Ms. Deer's EEOC claim until March 9, 2010.

Ms. Deer fails to raise a genuine factual issue as to the date on which Pediatric Associates became aware of her Charge of Discrimination. Instead of presenting any evidence to refute Pediatric Associates' contention that it was not aware of the EEOC claim until March 9, 2010, Ms. Deer merely "argues in good faith that this is not true." Resp. in Opp'n (D.E. # 56) at 4. Ms. Deer claims that when she filed her Charge of Discrimination on February 5, 2010, she "was informed that

10

within ten (10) days Pediatric would be notified by the EEOC of the complaint." Deer Decl. (D.E. #57) at 7. Ms. Deer also contends that she contacted the EEOC approximately ten days later and "was informed that Pediatric was indeed served with the notice of complaint." *Id.* Such statements, however, amount to no more than unsubstantiated, inadmissible hearsay, and the "general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (quoting *Garside v. Osco Drug, Inc.*, 895 F.3d 46, 50 (1st Cir. 1990)); *see also Smith v. HCA, Inc.*, No. 3:03-cv-754J99-TEM, 2005 WL 1866395, at *3 (M.D. Fla. July 26, 2005) ("Conclusory, self serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment or directed verdict." (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990))).

Additionally, as noted above, Ms. Deer's "good faith" argument simply is not enough. She may not rely on unsupported factual allegations to defeat Pediatric Associates' Motion for Summary Judgment, and statements based upon information and belief are insufficient to raise genuine issues of material fact. *See Ellis*, 432 F.3d at 1326. Ms. Deer has presented no evidence to refute Pediatric Associates' argument that it was unaware of Ms. Deer's Charge of Discrimination prior to March 9, 2010, and, consequently, Ms. Deer cannot establish a genuine issue of material fact as to causation for those adverse employment actions that transpired before March 9, 2010. *See Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.").

Furthermore, it is undisputed that several of the negative actions complained of actually occurred prior to this date. While Dr. Bennett reviewed Ms. Deer's 2009 performance evaluation with her on March 9, 2010, he prepared the written evaluation on February 17, 2010. *See* 2009 Annual Review (D.E. #40-5) at 1; Bennett Decl. (D.E. #41) at 4. In the evaluation, Dr. Bennett gave Ms. Deer low scores for "Individual Initiative," "Personal Job Efficiency," and "Planning." [13] Dr. Bennett noted that Ms. Deer "should spend more time with her staff," that she "needs to organize

---

[13] Dr. Bennett gave Ms. Deer a score of "2" for these sections. This score correlates with the following rating: "Fair/Needs Improvement: Performance does not meet an acceptable level in all areas. Improvement is needed." 2009 Annual Review (D.E. #40-5) at 2.

her work in order to spend more time on the floor managing her staff," and that she needs to "take more initiative in recognizing clinical (M.A.) weaknesses and correcting them."  2009 Annual Review (D.E. #40-5) at 3–4.  Dr. Bennett then set forth time frames within which Ms. Deer was to improve her performance.  *Id.* at 6.

Similarly, Ms. Glennon issued Ms. Deer a written performance warning on March 2, 2010, which Ms. Deer signed.  The warning indicates that Ms. Glennon and Ms. Deer discussed Ms. Deer's failure to timely complete assignments, such as filling out reports for the Immunization Tracker system and turning in record release sheets.  *See* Documented Note to File (D.E. #40-4); Caruso Decl. (D.E. #40) at 5.   Ms. Glennon also addressed certain emails whose "content was unprofessional" and discussed with Ms. Deer the "expectation of 'manager to manager respect.'" Documented Note to File (D.E. #40-4).  Furthermore, the warning indicates that Ms. Glennon and Ms. Deer discussed the discrepancy Ms. Deer made in Pediatric Associates' inventory of Prevnar, at a cost of $54,015.00 to Pediatric Associates, as well as the expectation that Ms. Deer was to spend a certain amount of time on the floor.  *Id.*

Thus, while Ms. Deer claims that "it was only after her charge of discrimination was filed" that she was subjected to the "litany of alleged employment offenses brought forth against her in such a short amount of time," Resp. in Opp'n (D.E. #56) at 5, the record clearly demonstrates that the vast majority of the negative reports and reprimands complained of occurred prior to March 9, 2010.  Ms. Deer has introduced no evidence indicating that the adverse actions discussed above occurred after that date, and Ms. Deer therefore fails to demonstrate the existence of a genuine issue of material fact regarding the causal connection between the filing of her EEOC claim and those actions.  Accordingly, Ms. Deer cannot establish a prima facie case of retaliation with respect to the employment actions addressed above.

There are, however, certain allegedly adverse employment decisions that occurred after Pediatric Associates became aware of Ms. Deer's Charge of Discrimination.  Specifically, Pediatric Associates issued two critical offense warnings to Ms. Deer on March 23, 2010, which Ms. Deer refused to sign, and ultimately terminated Ms. Deer on March 24, 2010.  Ms. Deer's burden of demonstrating causation with respect to such actions is not strenuous.  To establish the causal connection element of her prima facie case for the actions that occurred after March 9, 2010, Ms. Deer "need only show 'that the protected activity and the adverse action[s] were not wholly

unrelated.'" *Clover v. Total Sys. Servs, Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985). Generally, a "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart*, 231 F.3d at 799. Here, Pediatric Associates issued the final performance warnings and terminated Ms. Deer approximately two weeks after receiving the Notice of Charge of Discrimination. It is possible to establish a causal connection based upon such close proximity. *See Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 997 (11th Cir. 2010) ("[I]t is possible to establish a causal link between [the plaintiff's] termination and the filing of the present lawsuit, based solely on the 'very close' proximity between the filing of the lawsuit on September 29, 2008, and the termination just over two weeks later, on October 15, 2008"). As such, Ms. Deer has established a prima facie case of retaliation with respect to the March 23, 2010 performance warnings and her March 24, 2010 termination, and the burden shifts to Pediatric Associates to demonstrate legitimate, nondiscriminatory reasons for its employment decisions.

Pediatric Associates' burden, at this stage, is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). It is one of production, not persuasion, and Pediatric Associates need only present evidence from which a jury could reasonably conclude that its proffered reasons for its actions are legitimate. *Id.* Here, Pediatric Associates has advanced several legitimate, nondiscriminatory reasons for its decisions. Pediatric Associates states that it issued the March 23, 2010 critical offense warning regarding improper use of Ms. Deer's company computer and company email because its policies strictly prohibit employees from using company computers and email for personal reasons and from engaging in activities that conflict or interfere with scheduled work hours or with time needed to complete company work. *See* Caruso Decl. (D.E. #40) at 6–7 and corresponding exhibits; Critical Offense Documentation (D.E. #40-14) at 1–2. Ms. Deer was aware of Pediatric Associates' policies, and she previously acknowledged receipt of both Pediatric Associates' code of conduct and systems monitoring policy. *See* Caruso Decl. (D.E. #40) at 6, 8. On March 5, 2010, Mr. Vega, who serves as Pediatric Associates' IT Supervisor and monitors employees' workstations, informed Ms. Caruso that he had seen "red flags" related to Ms. Deer's computer use. On, March 10, 2010, Ms. Caruso asked Mr. Vega for access to Ms. Deer's email and also instructed Mr. Kirkpatrick, the Systems Administrator, to conduct an investigation

of Ms. Deer's workstation. Ms. Caruso's review of Ms. Deer's email "revealed that hours and hours of Ms. Deer's time, while she was supposed to be working for Pediatric Associates, were spent for her own personal gain running two businesses referred to as Carib United, Inc. and JHSASN." *Id.* at 7.  Pediatric Associates also notes that Ms. Deer was not the only employee investigated or disciplined for misuse of company computers.  For example, Kyra Morgan, Pediatric Associates' night shift Front Office Manager, received a critical offense warning similar to Ms. Deer, and Michelle Stokes, another employee, was also disciplined.  *Id.* at 9–10.

Pediatric Associates similarly has advanced legitimate, nondiscriminatory reasons for issuing Ms. Deer the critical offense warning regarding job abandonment.  In her declaration, Ms. Caruso states that Ms. Deer "was not showing up for work on time and/or leaving the office without approval during work hours" and that "Ms. Deer was not present on the floor as required." *Id.* at 5; Additionally, Ms. Deer left work without seeking approval on March 9, 2010, following her 2009 performance review with Dr. Bennett, "leaving the office without a clinical manager for the remainder of her shift." *Id.* at 6; *see also* Bennet Decl. (D.E. #41) at 4.  Dr. Bennett further testified that, even after he sent Ms. Deer an email directing her to let him know when she left the office, Ms. Deer again left work the following day after lunch.  *See* Bennett Decl. (D.E. #41) at 5.  These proffered reasons are also contained in the critical offense warning itself.  *See* Critical Offense Warning (D.E. #40-15).

Finally, Pediatric Associates has set forth legitimate grounds for Ms. Deer's ultimate termination.  First, as noted by Ms. Caruso in her declaration, and as evident from discussion above, Ms. Deer's performance was already in question before Pediatric Associates learned of Ms. Deer's Charge of Discrimination. Furthermore, after the March 23, 2010 disciplinary meeting, at which Ms. Deer refused to sign the two critical offense violations presented to her, Ms. Caruso testified that Ms. Deer "did not go back to her office and did not perform any work she was instructed to do."  The very next day, Dr. Bennett again observed that Ms. Deer again was staying in her office with the door closed and that Ms. Deer provided no supervisory support to staff.  *See* Bennett Decl. (D.E. #41) at 6.  At the end of the day, after conferring with Ms. Glennon, Ms. Caruso decided to terminate Ms. Deer's employment based on Ms. Deer's failure to do her work, her insubordination, and her untruthful responses regarding the misuse of her company computer and email.  *See* Caruso Decl. (D.E. #40) at 8–9.

14

The reasons set forth by Pediatric Associates are more than sufficient to satisfy its burden of producing legitimate, nondiscriminatory reasons for both its decision to discipline Ms. Deer upon her return to the Skylake office on March 23, 2010, and for its decision to finally terminate her employment the following day. *See Perryman*, 698 F.2d at 1142. Accordingly, the burden now shifts back to Ms. Deer to demonstrate that Pediatric Associates' proffered reasons are actually pretext for prohibited retaliatory conduct.

Where an employer has presented a legitimate, nondiscriminatory reason for its conduct, the employee must "meet that reason head on and rebut it." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)). If "the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Id.* (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000)). Furthermore, a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer," and an employee "cannot succeed by simply quarreling with the wisdom of [the employer's] reason." *AI Transp.*, 229 F.3d at 1030. To defeat a motion for summary judgment once a defendant has come forward with adequate reasons for its employment actions, a Title VII plaintiff must "present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext." *Earley*, 907 F.2d at 1081. "Mere conclusory allegations and assertions will not suffice." *Id.*

Ms. Deer has failed to present sufficient evidence to create a genuine issue of material fact that Pediatric Associates' stated reasons for its actions are pretextual. Her sole argument for pretext is the same as that presented in support of her prima facie case of retaliation, merely that "any and all other negative reports and/or disciplinary action taken against her" are "simply evidence of Pediatric's effort to create a reason to fire her and are a pretext for discriminatory retaliation against her." Resp. in Opp'n (D.E. #56) at 4. As discussed above, Ms. Deer set forth a prima facie case of retaliation only with respect to those actions that occurred after March 9, 2010. Furthermore, the causal connection element of Ms. Deer's prima facie case is based solely upon the fact that such adverse actions occurred shortly after Pediatric Associates received notice of her EEOC claim. While close temporal proximity can establish causation for purposes of a prima facie case of retaliation, it is not enough, in and of itself, to raise a genuine issue of fact as to pretext. *See*

*Wascura v. City of South Miami*, 257 F.3d 1238, 1244–45 (11th Cir. 2001) (noting that while close temporal proximity may support a finding of a causal connection between two events, that proximity, "standing alone," does not show that the articulated reasons for an employment action are pretextual); *see also Merlan v. Target Corp.*, No. 3:04CV264 LAC, 2006 WL 680814, at *6 (N.D. Fla. Mar. 14, 2006) ("It is widely held that timing alone is insufficient to establish pretext."). Here, Ms. Deer simply lists the actions she claims were retaliatory and concludes that "the litany of alleged employment offenses brought forth against her in such a short amount of time," coupled with Ms. Caruso's alleged post-termination statement to staff members that Ms. Deer "was a threat," amounts to pretext. Resp. in Opp'n (D.E. #56) at 5. It is entirely unclear how Ms. Caruso's alleged comment is evidence of pretext, and Ms. Deer does not elaborate on this issue. Thus, aside from her general allegations, Ms. Deer fails to set forth any specific facts in her Response in Opposition to challenge the multitude of legitimate reasons Pediatric Associates presents in support of its actions.

It is important, however, to also address certain statements made by Ms. Deer in her declaration that may constitute an attempt to refute Pediatric Associates' stated reasons for its employment decisions. While Ms. Deer neither raises such statements as argument in her Response in Opposition nor alerts the Court to their existence in the record, the Court, in an abundance of caution, shall address the portions of Ms. Deer's declaration that are relevant to its decision in this case.[14] For example, Ms. Deer appears to challenge Pediatric Associates' proffered reasons for its employment actions, namely that Ms. Deer failed to do her work and was insubordinate, by stating that she was on a "flex schedule" and that she was "previously permitted to be in her office 75% of the time." Deer Decl. (D.E. #57) at 2, 7. Irrespective of what she previously may have been told, however, Ms. Deer does not contest the fact that she had been instructed, on multiple occasions, to spend less time in her office with the door closed and more time on the floor supervising her staff.

---

[14]   Counsel's failure to direct the Court to relevant statements in Ms. Deer's declaration or to include such statements in its argument complicates the Court's task in this matter. As noted above, Ms. Deer also failed to provide the Court with a statement of contested facts as required by the Local Rules. See S.D. Fla. L.R. 7.5(b) ("The papers opposing a motion for summary judgment shall include . . . a single concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."). It is certainly not the Court's responsibility to sift through the record to make arguments on Ms. Deer's behalf. However, in keeping with Court's duty to assess the evidence in the light most favorable to Ms. Deer, and in an effort to reach the correct result in this case, the Court will consider those statements in Ms. Deer's declaration that may be construed as responsive to the legitimate, nondiscriminatory reasons set forth by Pediatric Associates.

16

Simply stating that she believed she was allowed to spend a certain amount of time in her office is insufficient to call Pediatric Associates' asserted reasons into question and raise a genuine issue of fact as to pretext where the record is clear that Ms. Deer knew her supervisors were unhappy with her performance but failed to conform her behavior to that which was expected of her. *See Holifield*, 115 F.3d at 1565 ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance. Thus, where the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence.") (citations omitted).

Additionally, in her declaration, Ms. Deer states that she never admitted or said that she lied about being president of JHSASN and Carib United, Inc. or was "otherwise untruthful." Deer Decl. (D.E #57) at 8.  Because one of the proffered reasons for Ms. Deer's termination is that she lied about her involvement in these organizations when confronted about using her company computer and email for personal business, Ms. Deer's contention that she did not lie to Ms. Caruso potentially raises an issue of fact as to the validity of this stated reason for her termination.  However, even assuming that there is a genuine issue of fact as to whether Ms. Deer's alleged untruthfulness was pretext for her termination, Ms. Deer "must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual" to avoid summary judgment. *Chapman*, 229 F.3d at 1037 (emphasis added).  Whether Ms. Deer was actually untruthful when questioned about her computer and email use does not impact Pediatric Associates' other legitimate, nondiscriminatory reasons for Ms. Deer's ultimate termination—that she was insubordinate and failed to do the work required of her.  Thus, while there may be a disputed issue of fact as to whether Ms. Deer's untruthfulness was a legitimate reason for her termination, it is insufficient to defeat summary judgment in this case.  *See Crawford*, 482 F.3d at 1308–09 (upholding summary judgment where an officer failed to demonstrate that each of the city's five nondiscriminatory reasons for his termination was mere pretext for unlawful retaliation).

While Ms. Deer presented evidence to support her prima facie case of retaliation, this evidence, standing alone, is simply not enough to create an issue of fact in light of the legitimate, nondiscriminatory reasons presented by Pediatric Associates for its actions and Ms. Deer's failure to  raise a genuine issue of material fact as to whether such reasons are pretextual.  Accordingly, Pediatric Associates is entitled to summary judgment on Ms. Deer's retaliation claim.

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment GRANTED.  The Court will issue a separate order entering final judgment in favor of Pediatric Associates and closing this case.

DONE AND ORDERED in Chambers, Miami, Florida, July 8, 2011.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of record